lease, nor did it participate in the preliminary negotiations. The plaintiff was ignorant of the transactions, as it claims, and it is so admitted by all the interested parties, until after the discharges were executed and the defendants' new mortgage taken. The discharges of the first two mortgages should be canceled, and the liens created thereby restored, and the amount due thereon be fixed and determined in the judgment, so that, on the sale, interested parties may know the amount due thereon.

The parties agree there was due on two first mortgages $1,500 on the day the last mortgage was dated, which sum, with interest thereon from that day, will fix the amount now due. I am unable to determine from the data before me the portion due on those mortgages, respectively, and if the parties cannot agree how this sum should be distributed, they may appear before me for a hearing on this question. The plaintiff is entitled to the usual decree of foreclosure, with costs, and the sum realized on the sale should be divided between the plaintiff and the defendants Evans, McLaren & Co., based upon the notes held by those parties, respectively, which, upon the note held by the plaintiff on the 14th day of May, 1894, amounted to $450, and on the note held by Evans, McLaren & Co., dated July 5, 1893, was $450 less the indorsements thereon of $10. The plaintiff is entitled to judgment for any deficiency against the defendant Story.

---

(17 Misc. Rep. 256.)

### BEARDSLEY v. NEW YORK, L. E. & W. R. CO.

(Supreme Court, Special Term, Tompkins County. May, 1896.)

**1. RAILROAD COMPANIES—REGULATION OF FARES—REPEAL OF STATUTE.**
Laws 1890, c. 565, regulating railroad fares within the state without excepting any company from its operation, thereby repeals Laws 1850, c. 140, § 49, which excepted existing companies from the provision thereof regulating fares; and therefore Laws 1895, c. 1027, imposing a penalty on any railroad company which shall refuse to issue a mileage book to any person at a certain rate, applies to a company incorporated before the passage of the act of 1850.

**2. SAME—EXTENT OF POWER.**
A statute regulating railroad fares does not impair the obligation of contracts, unless the effect is to take from the company all profits.

**3. SAME—INTERFERENCE WITH RIGHT TO TRANSACT BUSINESS.**
A statute which requires railroad companies to issue mileage books to any person applying therefor is not prima facie so unreasonable as to be an unlawful interference with the rights of the company to transact business.

**4. CONSTITUTIONAL LAW—HOW QUESTION IS RAISED.**
The objection that a statute requiring railroad companies to issue mileage books at certain rates is so far unreasonable as to impair charter rights cannot be raised by demurrer to the complaint in an action to recover the penalty prescribed for refusal to comply with the statute.

Action by Albert H. Beardsley against the New York, Lake Erie & Western Railroad Company to recover a penalty under Laws 1895, c. 1027, which provides that if a railroad company shall refuse to issue a mileage book to any person at a certain rate per mile, it shall forfeit $50, to such person. Defendant demurs to the complaint. Judgment for plaintiff.

Herendeen & Mandeville, for plaintiff.

D. C. Robinson and Frederick Jennings, for defendant.

SMITH, J.    My conclusions in this case, briefly stated, are as follows:

First. The act of 1895 applies to the defendant company.    The New York & Erie Railroad Company, to whose rights defendant succeeded, was chartered under chapter 224 of the Laws of 1832. That charter reserved to the company the right to fix its own rate of compensation.    The general railroad act of 1850 (c. 140) prescribed certain rates of compensation, but excepted from the force of those provisions existing railroad corporations.    The general railroad act of 1890 (c. 565) has prescribed certain rates of compensation, and has made no exception from such provision.    The authority under the act of 1890 to prescribe rates of fare, while in form permissive, is the only authority now existing.    The repeal of section 49 of the act of 1850, which excepted existing corporations from the operation of the compensation provision of that statute, indicates to me an intention on the part of the legislature to subject all railroads to the provisions of the general act of 1890.    The act of 1890 is a complete scheme for the government of all railroads, and repeals, by implication, the right to defendant to fix fares given in the act of 1832.    See People v. Fire Com'rs of Brooklyn, 146 N. Y. 357, 40 N. E. 988.    The provision of the act of 1890 which saves accrued rights refers to contract rights, and not to a right to regulate fares, the power to modify which was reserved in the charter of the corporation.

Second. The law seems now to be settled that the legislature of the state has no authority to regulate fares of travelers from one state to another, nor to regulate the fares within the state of persons traveling from one state to another.    Such a statute would be repugnant to the commerce clause of the federal constitution.    See Wabash Case, 118 U. S. 557, 7 Sup. Ct. 4, approved Louisville, N. O. & T. Ry. Co. v. State of Mississippi, 133 U. S. 591, 10 Sup. Ct. 348. These cases establish, further, that a legislature has the right to regulate the rate of fare for persons traveling from one point to another within the state, where such trip is not a part of a trip to a point without the state.    See, also, Railroad Commission Cases, 116 U. S. 325, 6 Sup. Ct. 334, 348, 349, 388, 391, 1191; Dow Case, 125 U. S. 688, 689, 8 Sup. Ct. 1028.

Third. Such a regulation of fares does not impair the obligation of contracts, unless it results in taking from the company all profit, or amounts to a practical confiscation.    Railroad Commission Cases, 116 U. S. 335, 6 Sup. Ct. 334, 348, 349, 388, 391, 1191; Dow Case, 125 U. S. 689, 8 Sup. Ct. 1028; Budd Case, 143 U. S. 534, 12 Sup. Ct. 468; Regan Case, 154 U. S. 397, 14 Sup. Ct. 1047; St. Louis & S. R. Co. Case, 156 U. S. 657, 15 Sup. Ct. 684.    Under the cases cited, it seems that the defendant may show that the rate prescribed takes from it all profits, in which case the court would hold the same to be an unreasonable exercise of legislative power, and unconstitutional.

The case at bar arises upon demurrer to the plaintiff's complaint. The defendant has therefore no allegation that the act is unconstitutional because it operates to take away its profit.    In the absence of such allegation and proof, the legislative rate is to be taken as presumptively reasonable.    Ruggles Case, 108 U. S. 541, 2 Sup. Ct. 823.    Chicago, M. & St. P. Ry. Co. Case, 134 U. S. 418, 10 Sup. Ct. 462, 702, cited by defendant's counsel, has reference simply to an authority delegated to a commission to fix rates.    Where the legislature itself fixes the rates, it need not act upon judicial investigation, but it may directly prescribe the rates, subject to the power of the court thereafter, upon judicial investigation, to declare the same unreasonable and void.    Defendant's charter has in it a reserved power in the legislature to modify or alter the same.

Fourth. The requirement that the defendant company shall issue a mileage book is not prima facie so unreasonable as can be held in law to be an unlawful interference with the rights of the company to transact business.    The corporation exists and acts by legislative permission, subject to any legislative control and direction which does not amount to a destruction of its property.    The question cannot be raised upon demurrer to the complaint that this regulation is so far unreasonable as to impair the charter rights of the defendant company.    Such question can only be raised upon defendant's allegation and proof.

Fifth. The act of the legislature must be construed to require the acceptance of the mileage ticket for transportation from one point to another within the state.

1. The presumption of constitutionality exists.    In the Buffalo, E. S. R. Co. Case, 111 N. Y. 139, 19 N. E. 65, Chief Judge Ruger says:

"Every exercise of legislative power is presumed to be constitutional, and it cannot, without the clearest language indicating such an intention, be supposed that parties anticipated the enactment of an unconstitutional law, or contracted upon such an assumption."

Any reasonable doubt should be resolved in favor of the constitutionality of a statute.

In People v. Budd, 117 N. Y. 29, 22 N. E. 670, 680, Judge Andrews, in writing for the court, says:

"But it is ever to be remembered that a statute must stand so long as reasonable doubt can be indulged in favor of its constitutionality."

In People v. Rice (Sup.) 20 N. Y. Supp. 299, it is held:

"Before courts will declare an act of the legislature void as in violation of some provision of the constitution, a case must be presented in which there can be no rational doubt. The incompatibility of the legislative enactment with the constitution must be manifest and unequivocal."

In 23 Am. & Eng. Enc. Law, at page 349, it is said:

"There is a presumption in favor of the constitutionality of a statute which requires, when a statute is susceptible of two constructions, one constitutional and the other not, that the former should be adopted, even though the latter may be the more natural interpretation of the language used." See cases cited.

In the same authority, the rule is laid down in these words:

"There is a general presumption that a legislature does not intend to exceed its jurisdiction. In the absence of an intention expressed or inferred, the

presumption is that a legislature does not design its statute to operate beyond the territorial limits of its jurisdiction."

In Ex parte Blain, 12 Ch. Div. 522, Brett, L. J., said:

"The governing principle is that all legislation is prima facie territorial."

In the Farnum Case, 1 ·Sumn. 46, Fed. Cas. No. 4,675, Story, J., said:

"It cannot be presumed that a legislature authorizes any act to be done in a foreign territory when that act is beyond the reach of its proper jurisdiction or sovereignty. Every legislature, however broad may be its·enactments, is supposed to confine them to cases or persons within the reach of its sovereignty."

See, further, New York & O. R. Co. Case, 57 N. Y. 477; Kerrigan Case, 68 N. Y. 385; In re New York El. R. Co., 70 N. Y. 342; People v. Comstock, 78 N. Y. 356; Curtin v. Barton, 139 N. Y. 513, 34 N. E. 1093.

2. The construction thus given seems to be sustained by authority. In the case of Attorney General v. Old Colony Railroad, 160 Mass. 81, 35 N. E. 253, the supreme court of Massachusetts had under consideration a statute which can hardly be distinguished from the statute in the case at bar, requiring railroads to issue mileage tickets. The statute was held unconstitutional, because it required the different railroads to accept mileage tickets issued by other railroads. In discussing the question, however, which arises in this case, the court said:

"The statute of 1892 (chapter 389) can, we think, be construed as relating only to the fares for transportation of passengers from one point to another within the commonwealth; and if, under the existing regulations of a railroad company, there may be some difficulty in applying the law when a passenger intends to proceed from or to a point within the commonwealth to or from a point outside of the commonwealth, we do not see that this difficulty is inherent in the subject, or that, by proper regulations, the fares for passengers for transportation within the commonwealth cannot be paid for by mileage tickets, although the passengers are traveling to or from a place beyond the limits of the commonwealth. It is no sufficient objection to the statute that it may incidentally affect commerce between the states, if it does not attempt to regulate such commerce."

One of the objections urged by defendant's counsel to this interpretation of the statute is that it is impossible to give effect to such a statute without a necessary interference with interstate traffic. For instance, suppose a passenger to be going to Jersey City, and offers a mileage ticket to Binghamton, and from there buys his ticket to Jersey City. Confessedly, the mileage book need not be accepted for a part of a transportation which is to end in another state. While a difficulty is undoubtedly presented, it is not, I think, insurmountable. In the Railroad Commission Cases, 116 U. S. 325, 6 Sup. Ct. 334, 348, 349, 388, 391, 1191, and in the Dow Case, 125 U. S. 688, 8 Sup. Ct. 1028, statutes were held to be constitutional which fixed a maximum rate of fare within the state. These statutes would have been obnoxious to the same criticism.

From these views it follows that the act of 1895 in question, as construed, is a valid exercise of legislative power, and that the refusal of the defendant to give to the plaintiff a mileage book upon his de-

mand has given to him a valid cause of action° for the penalty prescribed by the statute. Judgment is therefore directed for the plaintiff for the sum of $50, the amount of said penalty.

Ordered accordingly.