(19 Misc. Rep. 116.)

### DILLON v. ERIE R. CO.

(Supreme Court, Appellate Term, First Department. January 28, 1897.)

1. RAILROADS—REGULATION OF FARES.
    Laws 1892, c. 676, § 37, which provides that "every" railroad company "may" collect certain rates of fare, limits a privilege to fix its own rates of fare theretofore possessed under a special law by a railroad; since the intention of the legislature was to fix a maximum rate beyond which no railroad could charge, and, as the acts were passed in order to revise the whole

law relating to railroads, they modified or repealed all former laws inconsistent with them. Beardsley v. Railroad Co., 40 N. Y. Supp. 1077, 17 Misc. Rep. 256, approved.

**2. CONSTITUTIONAL LAW—INTERFERENCE WITH INTERSTATE COMMERCE.**

Laws 1895, c. 1027, § 1, as amended by Laws 1896, c. 835, which provides that railroads operating "in this state" shall sell mileage books at a certain rate, does not, as regards a railroad whose lines extend beyond the state, interfere with interstate commerce, as it is intended to apply only to the carrying of passengers between points in the state.

**3. RAILROADS—MILEAGE BOOKS—TRAVEL BEYOND STATE LIMITS.**

A railroad cannot refuse to sell a person a mileage book, as required by said Laws 1895, c. 1027, § 1, on the ground that he intends to tender its coupons in exchange for a ticket to a point without the state.

**4. CONSTITUTIONAL LAW—IMPAIRING OBLIGATION OF CONTRACTS.**

Laws 1895, c. 1027, § 1, requiring railroad companies to issue mileage books at certain rates, does not impair the obligation of the contract in Laws 1832, c. 224, § 14, which provides that the New York & Erie Railroad Company may regulate its charges; since this grant is subject to the common-law rule that charges must be reasonable, and the legislature can declare what is a reasonable charge.

**5. SAME—DEPRIVING OF PROPERTY WITHOUT DUE PROCESS OF LAW.**

Legislative regulation of business carried on under special privileges, or affected with a public·interest, is not a taking of property without due process of law, though it reduces the profits, unless it amounts to a virtual confiscation.

Appeal from Eleventh district court.

Action by John J. Dillon against the Erie Railroad Company to recover the penalty prescribed by law for its refusal to sell him a mileage book. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

Stetson, Tracy, Jennings & Russell (E. R. Greene, of counsel), for appellant.

Levi S. Tenney, for respondent.

BISCHOFF, J. Upon proof of the defendant's incorporation under and pursuant to the railroad law of 1890 (chapter 565 of the Laws of that year); that it operates a railroad which extends through territory of the states of New Jersey and Pennsylvania, and is located mainly (for more than 380 miles of its length), in the state of New York; that the operation of the railroad includes communication between points within the last-mentioned state; that it charges a maximum fare of more than two cents per mile; and that upon application by the plaintiff therefor, at the defendant's ticket office in the city of New York, and his offer to pay the requisite amount, it had refused to issue to the plaintiff a mileage book, as required by section 1 of chapter 1027 of the Laws of 1895, as amended by chapter 835 of the Laws of 1896,—the plaintiff had judgment below for the penalty prescribed for the refusal. The defendant here assails the recovery upon grounds which, properly grouped, are (1) that the act of 1895, above alluded to, does not apply to it, because the defendant is not restricted by law to the charge of a maximum fare of three cents per mile; (2) that, if the act was intended to apply to the defendant, it is violative of the federal constitution, by virtue of which congress is invested with the power to regulate interstate

43 N.Y.S.—21

commerce, because the defendant is engaged in interstate as well as intrastate commerce; (3) that the act contravenes the federal constitution, in that it impairs the obligation of a contract; and (4) that the act conflicts with the federal and state constitutions, in that it deprives the defendant of property without due process of law.

The amendatory act became effective, if at all, by the approval of the governor, on May 22, 1896, before the plaintiff's demand for the mileage book. Its provisions, and those of the act amended, are as follows (the former being italicized to distinguish them for convenient reference from the latter):

"Section 1. Every railroad corporation operating a railroad in this state, the line or lines of which are more than one hundred miles in length, and which is authorized by law to charge a maximum fare of more than two cents per mile, and not more than three cents per mile, and which does charge a maximum fare of more than two cents per mile, shall issue mileage books *having one thousand coupons attached thereto*, entitling the holder thereof, *upon complying with the conditions hereof* to travel one thousand miles on the line or lines of such railroad, for which the corporation may charge a sum not to exceed two cents per mile. *Such mileage books shall be kept for sale by such corporation at every ticket office of such corporation in any incorporated village or city and shall be issued immediately upon application therefor. The holder of any such mileage book shall be entitled, upon surrendering, at any ticket office on the line or lines of such railroad, coupons equal in number to the number of miles he or any member of his family or firm, or any salesman of such firm, wishes to travel on the line or lines of such railroad, to a mileage exchange ticket therefor. Such mileage exchange ticket shall entitle the holder thereof, without producing the mileage book upon which such exchange ticket was issued, to the same rights and privileges in respect to the transportation of persons and property to which the highest class ticket issued by such corporation would entitle him. Such mileage book shall be good until all coupons attached thereto have been used.* Any railroad corporation which shall refuse to issue a mileage book as provided by this section, or in violation hereof, to accept such mileage book for transportation, shall forfeit fifty dollars, to be recovered by the party to which such refusal is made; but no action can be maintained therefor, unless commenced within one year after the cause of action accrues.

"Sec. 2. This act shall take effect immediately."

We proceed to answer the grounds urged for reversal of the judgment appealed from in their order as above enumerated.

1. The defendant is restricted by law to the charge of a maximum fare of three cents per mile. The proposition is material, because the act under review is in terms limited to apply to such railroad corporations as are "authorized by law to charge a maximum fare of more than two cents per mile, and not more than three cents per mile." Section 37 of the railroad law of 1890, as amended by chapter 676 of the Laws of 1892, provides that "every railway corporation may fix and collect the following rates of fare as compensation to be paid for transporting any passenger and his baggage, not exceeding one hundred and fifty pounds in weight, for each mile or fraction of a mile," etc. Then follows a division of the several railroads into classes, the regulations as to the fifth class, which concededly includes the defendant's railroad, prescribing the rate of fare to be "three cents for every such mile or fraction thereof, with a right to a minimum single fare of not less than five cents." The statutory provisions last above alluded to would seem effectually to

dispose of the defendant's contention that it is not restricted to the charge of a maximum fare of three cents per mile. However, it is urged seriously that the language "every railway corporation may fix and collect following rates of fare," etc., is permissive only, and that, therefore, it does not exclude legislative intention to preserve a privilege, theretofore specially granted to a corporation whose successor in interest the defendant claims to be, to charge in excess of the rates of fare fixed by the railroad law of 1890. This last contention unmistakably ignores two most important elements to be considered in solving the question of the intention of the legislature, —the one, that the business of railway corporations, as common carriers, is one conducted under special privileges from the state, and affected with a public interest, which it is therefore within the province of the legislature, in the proper exercise of its police power, to regulate (Reagan v. Trust Co., 154 U. S. 362, 14 Sup. Ct. 1047; Budd v. New York, 143 U. S. 517, 12 Sup. Ct. 468; Munn v. Illinois, 94 U. S. 113; Tied. Lim. § 189 et seq.); and the other, that the legislature, in the enactment of the railroad law of 1890, plainly intended and actually undertook to exercise its power in that respect, to the end that the public should be saved from charges for transportation which would be grossly disproportionate to the service required, and hence unreasonable. To regulate is to govern. The one is synonymous with the other; and restraint is of the essence of all government. Hence to regulate or govern is to restrain. When, therefore, the legislature undertook to regulate the business of railway corporations, as common carriers, it necessarily meant to circumscribe their privileges; that is to say, to compel the exercise of such business within certain limits. It seems beyond the peradventure of forceful challenge, therefore, that the rates of fare prescribed by the railroad law of 1890 were meant to be the utmost of the charges for transportation; in other words, that the rates prescribed were intended to be the maximum rates. "Expressio unius, exclusio alterius." Suth. St. Const. § 325; Black, Interp. Laws, 140; End. Interp. St. § 399; Broom, Leg. Max. (8th Am. Ed.) 650, 663. Axiomatically, therefore, in logic and in law, all rates of fare in excess of the rates prescribed were inhibited. True, the language "may fix and collect," etc., is generally permissive; but, upon giving heed to the apparent purpose of the enactment, it is irrefragable that the sense of permission in which the language was employed was that up to, but not beyond, the prescribed limit, the railway corporations affected may continue to charge for transportation at such rates as business, prudence, or expediency should dictate. Any interpretation of the provisions of the railroad law of 1890, in respect to the rates of fare there prescribed, which would, in effect, render the observance of such provisions optional on the part of the railway corporations, would imply a reproach to the legislature for having solemnly expressed that to be its will which is meaningless or redundant.

The defendant further urges that as the successor in interest, by virtue of chapter 160, Laws 1860, chapter 119, Laws 1861, chapter 430, Laws 1874, and chapter 446, Laws 1876, by virtue of the certificate of incorporation of the New York, Lake Erie & Western Rail-

road Company under the railroad law of 1850 (chapter 140 of the Laws of that year), and by the force of its own charter, it has acquired the privilege of the New York & Erie Railroad Company, given by section 14 of chapter 224 of the Laws of 1832, "from time to time to fix, regulate, and receive the tolls and charges * * * to be received for transportation of property and persons," etc.; there being no limit of such tolls and charges prescribed; that section 28 of the railroad law of 1850 limited the provisions of subdivisions 7 and 9 of the same section, enabling railway corporations "to take and convey persons and property, * * * and to receive compensation therefor, and to regulate *·* * the compensation to be paid * * * for any passenger and his ordinary baggage" at a rate not to "exceed three cents per mile," to corporations formed under the last-mentioned railroad law; and that the provisions of section 37 of the railroad law of 1890, as amended, in respect to the rates of fare, did not, and were not intended to, divest the defendant of the privilege formerly possessed by the New York & Erie Railroad Company, and acquired by the defendant, as claimed, to exact whatever fare it deemed expedient, provided it did not, in so doing, infract the requirement of the common law that the charge must not be an unreasonable one. That the defendant's immediate predecessor in interest, the New York, Lake Erie & Western Railroad Company, was deprived of the privilege granted to the New York & Erie Railroad under the act of 1832, and that it was subject to the restrictions imposed by the railroad law of 1890, in respect to the rates of fare, was explicitly ruled in Beardsley v. Railroad Co., 17 Misc. Rep. 256, 40 N. Y. Supp. 1077; and from such ruling we perceive no valid ground for dissent.

The rule which obtains in the construction of statutes, that a special act is not affected by the provisions of a later general act, has no application where the intention of the legislature to effect a repeal or change in the provisions of the earlier special act is clearly manifest (Black, Interp. Laws, 116; Suth. St. Const. 157; In re People, 146 N. Y. 357, 40 N. E. 988), which is here the case. The railroad law of 1890 was enacted in the furtherance of a scheme to revise and state the whole body of the law respecting the same subject-matter, and to shape it into one homogeneous code. By the adoption of the code, all former laws, general and special, in so far as they conflicted with the revised provisions, were either modified or repealed, as the case might be (Suth. St. Const. § 154; Bramston v. Mayor, etc., 6 El. & Bl. 246); and as if to emphasize its intention to place all railroads of the same class upon the same footing, and thus to include within the operation of the revision all special acts in pari materia, the legislature expressly declared (section 37) that "every" railway corporation should be privileged to ask and receive fares at the rates there prescribed for the several classes of railroads. Railway corporations existing at the time of the enactment of the railroad law of 1850 gained no new rights or privileges by their exemption from the restrictions imposed by the law last alluded to upon corporations formed under it. It is futile, therefore, to argue that the repeal by the railroad law of 1890 (section 180) of the ex-

emption, saying (section 181) "any act done, or right accruing, accrued or acquired," etc., "under or by virtue of any law so repealed," was intended to preserve to the New York & Erie Railroad Company, and its successors in interest, the privileges claimed under the act of 1832. Nor can it be any more plausibly urged that the re-enactment by the railroad law of 1890 (section 38) of the provisions of the railroad law of 1850 (section 33), made applicable to railroads then existing (section 49), and inhibiting the reduction of the rates of fare or other profits without the consent of the corporations affected, so as to produce a profit of less than 10 per centum of the capital actually invested, nor unless, after an examination by the designated body or officers, it should be apparent that the net income of the particular corporations for the year last past had, in fact, exceeded such 10 per centum, was intended to preserve such privilege. Assuming that the legislature of 1850 had the power thus to restrict its successors, no intended observance or recognition of the restriction by the legislature of 1890 is to be inferred against its obvious and emphatic repudiation thereof by limiting in the same act the rates of fare. We are not now dealing with any question of what the legislature of 1890 could do, but of what it intended to do.

2. The act of 1895, the one under review, applies to the defendant, and is not necessarily an infraction of the authority of congress to "regulate commerce * * * among the several states" (Const. U. S. art. 1, § 8, subd. 3); and by "commerce," of course, we understand every means of commercial intercourse, as well as actual traffic (Gibbons v. Ogden, 9 Wheat. 1, 189; Pensacola Tel. Co. v. Western Union Tel. Co., 96 U. S. 1; 11 Am. & Eng. Enc. Law, 540 et seq.). In view of the explicit language of the act, "Every railroad corporation operating a railroad in this state, the line or lines of which are more than one hundred miles in length," etc., the application of its provisions to the defendant does not appear to admit of debate. We shall therefore confine ourselves at present to the discussion of the defendant's contention that the act is unconstitutional because it comprehends railroads employed in interstate as well as intrastate commerce. Nothing in the act itself makes its provisions, in terms, applicable to interstate carriage of persons or property. It should not be assumed, therefore, if unconstitutionality would result, that such was the intention of the legislature. A conflict between the constitution and a statute will never be implied. Cochran v. Van Surlay, 20 Wend. 365; Newell v. People, 7 N. Y. 9, 109; People v. Fisher, 24 Wend. 215. So, also, a statute cannot be said to be unconstitutional if it is not in direct and necessary conflict with the constitution (Morris v. People, 3 Denio, 381), nor unless it cannot be supported by any reasonable intendment or allowable presumption (People v. Supervisors of Orange Co., 17 N. Y. 235). "A statute can be declared unconstitutional only when it can be shown beyond reasonable doubt that it conflicts with the fundamental law," and "until every reasonable mode of reconciliation of the statute with the constitution has been resorted to, and reconciliation has been found impossible, the statute will be upheld." People v. Board

of Sup'rs of Westchester Co., 147 N. Y. 1, 16, 41 N. E. 563, 566.   The language of the act is in no sense violated if its provisions are held to have been intended to be applicable to intrastate transportation only; that is to say, to transportation between points, both within the state, where such transportation is not a part of a through passage to or from another state.   Wabash, St. L. & P. Ry. Co. v. People of Illinois, 118 U. S. 557, 7 Sup. Ct. 4; Louisville, N. O. & T. Ry. Co. v. State of Mississippi, 133 U. S. 587, 10 Sup. Ct. 348; Stone v. Trust Co., 116 U. S. 307, 6 Sup. Ct. 334, 388, 1191; Dow v. Beidelman, 125 U. S. 680, 8 Sup. Ct. 1028.   Transportation from one point to another in the same state, with incidental passage through territory of an adjoining state, is not interstate commerce.   Lehigh Val. R. Co. v. Pennsylvania, 145 U. S. 192, 12 Sup. Ct. 806; Campbell v. Railroad Co. (Iowa) 53 N. W. 351.   In obedience, therefore, to the rule of interpretation adjudged in the cases cited, the act under review must be construed to apply to intrastate transportation or commerce only.   If an act can be constitutionally executed, its unconstitutionality is not manifest.   People v. Common Council of City of Rochester, 50 N. Y. 525.   Indeed, we may proceed further, and concede that the act was intended to apply to interstate and intrastate transportation.   While invalid as to the former, it is still to be supported as to the latter.   "Where a law is in conflict with the constitution, and that part is entirely separable from the residue, so that other portions of the law can be enforced without reference to it, there the unconstitutional part only will be condemned."   Wynehamer v. People, 13 N. Y. 378, 441; In re De Vaucene, 31 How. Prac. 289, 343.   Finally, the act bears intrinsic evidence of legislative intention to confine its provisions to intrastate transportation.   Such an intention is fairly inferable from the language, "Every railroad corporation operating a railroad in this state," etc.   Railroad Co. v. Sherwood (Tex. Sup.) 19 S. W. 455.

The defendant asserts, and not without evidence to sustain it in that regard, that the plaintiff sought the mileage book applied for with intent to tender its coupons in exchange for a ticket enabling him to travel from a point within to a point without the state.   But, even so, the causa sine qua non of the defendant's liability in this action was not that it refused to issue a mileage exchange ticket when tendered the coupons, but that it refused to issue the mileage book as required.   Had the defendant refused to accept the coupons in exchange for a ticket to a point on its railroad, outside the state, its objection, consistently with our construction of the act under review, would have been a valid one.   As it is, the plaintiff's intention, in the respect stated, was wholly immaterial.   Fisher v. Railroad Co., 46 N. Y. 644, 660.

3. The act under review is not obnoxious to the federal constitution (Const. U. S. art. 1, § 10, subd. 1), in that it impairs the obligation of a contract.   The contract alluded to is the act incorporating the defendant's alleged predecessor in interest, the New York & Erie Railroad Company (chapter 224, Laws 1832), section 14 whereof provided that such company should be privileged "from time to time, to fix, regulate and receive the tolls and charges   *   *   *   to be re-

ceived for transportation of property and persons," etc., there being, as before stated, no prescribed limit of such tolls and charges. We are relieved from all discussion of the proposition that subsequent legislation whereby a limit was prescribed is an impairment of the obligation of the contract, because the contrary was ruled by the court of last resort in such cases upon language precisely the same as here. "The case turns consequently on section 12, which is that 'it shall be lawful for the company * * * from time to time to fix, regulate and receive the toll and charges by them to be received for transportation,' etc. This would have been implied from the rest of the charter if there had been no such provision; and it is argued that, unless it had been intended to surrender the power of control over fares and freights, this section would not have been inserted. The argument concedes that the power of the company under this section is limited by the rule of the common law which requires all charges to be reasonable. In Munn v. Illinois, 94 U. S. 113, and Chicago, B. & Q. R. Co. v. Iowa, Id. 155, this court decided that, as to natural persons and corporations subject to legislative control, the state could, in all cases like this, fix a maximum beyond which any charge would be unreasonable; and that such maximum, when fixed, would be binding on the courts in their adjudications, as well as on the parties in their dealings. The claim now is that, by section 12, the state has surrendered the power to fix a maximum for this company, and has declared that the courts shall be left to determine what is reasonable, free from all legislative control. We see no evidence of any such intention. Power is granted to fix reasonable charges, but what shall be deemed reasonable in law is nowhere indicated. There is no rate specified, nor any limit set. Nothing whatever is said of the way in which the question of reasonableness is to be settled. All that is left as it was. Consequently, all the power which the state had in the matter before the charter it retained afterwards. The power to charge being coupled with the condition that the charge shall be reasonable, the state is left free to act on the subject of reasonableness within the limit of its general authority, as circumstances may require. The right to fix reasonable charges has been granted, but the power of declaring what shall be deemed reasonable has not been surrendered. If there had been an intention of surrendering this power, it would have been easy to say so. Not having said so, the conclusive presumption is there was no such intention." Stone v. Trust Co., 116 U. S. 307, 6 Sup. Ct. 334, 388, 1191.

In view of the above, it is unnecessary particularly to notice constitutional and statutory reservation to the legislature of the power to repeal, modify, or amend any former act. Const. N. Y. 1846, art. 8, § 1; Laws 1850, c. 140, § 33; Laws 1890, c. 565, § 38; Const. N. Y. 1894, art. 8, § 1. But we may briefly add that if the legislature of 1832, or any subsequent legislature, had undertaken to preclude their successors from regulating the tolls and charges of the New York & Erie Railroad Company, and its successors in interest, it is open to serious question that such act, in that respect, would have been operative. It is incompetent to the legislature to divest the

state of its police power.    Board v. Barrie, 34 N. Y. 657; Tied. Lim. §§ 189, 190.    The present is distinguished from the Dartmouth College Case, 4 Wheat. 518, in that, in the case last referred to, the corporation was not engaged in a business affected with a public interest, or under special privileges from the state.

4. The act under review is not, in so far as the record shows, open to the objection that the defendant is thereby deprived of its property without due process of law, contrary to the provisions of the federal and state constitutions.    Const. U. S. Amend. 14, § 1; Const. N. Y. 1894, art. 1, §§ 1, 6.    Whatever property the defendant may have acquired by its alleged succession to the privilege of the New York & Erie Railroad Company, under chapter 224 of the Laws of 1832, "from time to time, to fix, regulate and receive the tolls and charges  *  *  *  to be received from transportation of property and persons," etc., without prescribed limit, its enjoyment thereof was, nevertheless, circumscribed by the provisions of the same act, pursuant to which it was reserved to the legislature "at any time" thereafter to "alter, modify or repeal" the act itself.    Aside from that, however, the reasonable regulation of a business carried on under special privileges from the state, or affected with a public interest, is not a taking of property without due process of law, as inhibited by the constitution.    To the extent of such reasonable regulation,—that is to say, to the extent that such regulation does not amount to virtual confiscation,—every person or corporation engaged in a business of the kind mentioned is deemed to have assented to the subjection of the property therein employed to the control of the state.    Munn v. Illinois, 94 U. S. 113; Budd v. New York, 143 U. S. 517, 12 Sup. Ct. 468; Stone v. Trust Co., 116 U. S. 307, 6 Sup. Ct. 334, 388, 1191; Chicago, M. & St. P. Ry. Co. v. Minnesota, 134 U. S. 418, 10 Sup. Ct. 462, 702; Railway Co. v. Wellman, 143 U. S. 339, 12 Sup. Ct. 400.

That the provisions of the act under review would, in effect, if carried out, seriously hinder or obstruct the defendant's business as a common carrier, or otherwise tend to render its franchise, or the property employed in the operation of such franchise, valueless, or even less valuable, was not urged upon the trial, nor was there any evidence adduced in support of such a contention.    We cannot therefore judicially determine in the case at bar that the provisions of the act are unreasonable, and presumptively they are not so. Cases last above cited.    The unreasonableness of the provisions is to be determined as a question of fact.    Railway Co. v. Wellman, supra.

From what we have said, it follows that the judgment must be affirmed; and, upon the last two questions discussed, the late decision by the supreme court of the United States in Road Co. v. Sandford (Dec. 14, 1896) 17 Sup. Ct. 198, may be noted as a controlling authority.    It was held in that case that, where one corporation succeeds to the rights of another, an exemption from certain governmental control will not be extended to the succeeding corporation by implication, and that, in the absence of an expressed intent to grant the exemption, any doubt is to be resolved in favor of the public.

So, too, the question raised in the present case, as to the alleged impairment of the obligations of the contract claimed by the defendant to exist between it and the state, was there discussed, in accordance with the views above expressed.

Judgment affirmed, with costs.   All concur.