## Tobias Miller v. William O. Grandy, Sylvester H. Cranson and Joshua C. Griffin.

*Bounties, who entitled to, under the act relating to Jackson County.* — The act to legalize the action of the several townships, etc., in the County of Jackson in paying bounties to volunteers, and to refund money to pay bounties ( L. of 1865, p. 477,) can not properly be extended to cover any advance of money made by individuals on their own account, and not on the credit or by the authority of the municipalities.

MILLER v. GRANDY.

*Township meetings, notice of.* — A general statute requiring a longer notice for Township meetings is superseded for the time by a statute fixing a shorter notice for specific meetings for a particular purpose.

*Injunction to stay tax, who entitled to.* — An individual has no right, as a taxpayer, either in his own name or on behalf of himself and the other taxpayers to; file a bill to enjoin proceedings in advance of the actual levy of a tax. He cannot seek redress until his own tax can be ascertained, and he cannot then proceed in equity except to protect his individual interests from injuries not remedial otherwise.

*Injunction, the right of a private person to, in redress of a common public grievance.* — Private persons cannot assume to themselves the right to institute proceedings in chancery to redress grievances on behalf of the public. They can only proceed where their individual grievances are distinct from those of the public at large, and such as give them a private right to redress.

The only cases where individuals can sue on behalf of themselves and others, are where the interests, though numerous, are all separate, individual, and not joint or public interests, identical in character and origin, but all private and independent rights, springing out of the same transactions or fund.

*Heard November 2, 3 and 7.   Decided November 11.*

Appeal in Chancery from Jackson Circuit.

The facts appear in the opinion.

*James D. Conely,* for complainant:

1. The meeting of the electors was void, for the reason that less than fifteen days intervened between the time of making the order by the Township Board and the time the meeting was therein directed to be held; also, for the reason that said order was made without any request in writing, signed by twelve electors, that a special meeting be called for the purposes designated in said order; and for that no copy of said order was posted by the Town Clerk of said town. — *Comp. L. vol.* 1, *p.* 231, §§25 – 26 – 27 – 28.

The words "legal meeting," in laws of 1865, page 477, §2, have the same sense as when used in the act referring to the powers and duties of townships; and every statute must be so construed that no clause, sentence, or word shall be superfluous, void, or insignificant. — *Comp. L., vol.* 1, *p.* 227, §495 – 496; *Smith on Stat. Con.,* 518; *People v. Burns,* 5 *Mich.,* 114, 117; *Bishop*

on *Crim. L.*, vol. 1, §70; *Sears v. Cottrell*, 5 *Mich.*, 253.

2. No, part of the money proposed .to be re-assessed was at any time voted by the electors, or by the Town Board, as a bounty, either by tax, loan, or otherwise, but was money contributed by individuals to save themselves from the draft. This is a question of construction. The complainant contends that the words "such sums paid," etc., must be restricted to those cases where the township has voted money, raised a tax, levied money, or issued bonds, and individuals have advanced or pledged sums of money upon the faith of such township action. — *Laws of* 1865, *p.* 477, §1–2.

The above view is strengthened by considering the word "such," in the second section, and the word "other," before "ordinary claims," in the third section. The word "other" clearly shows that the allowances intended by this act were in the nature of legal or equitable claims against the township. —*Smith on Stat. Con.*, *p.* 656.

Where, of two constructions, one is reconcilable with the performance of a public duty, and the other tends to divest individuals of their property, to be given to others, the first construction will prevail. — *People v. Gallagher*, 4 *Mich.*, 244; *Woodbridge v. City of Detroit*, 8 *Mich.*, 276; *Smith on Stat. Con.*, *p.* 263, 272.

In the construction of an instrument, the whole of it is to be considered, and a construction of a detached part, without reference to the rest, is erroneous. — *Norris v. Showerman*, *Walker's Ch.*, 206; *Norris v. Showerman*, 2 *Doug. Mich.*, 16; *Paddock v. Pardue*, 1 *Manning*, *Mich.*, 421.

3. The act is unconstitutional.

The Legislature shall provide an uniform rule of taxation, except on property paying specific taxes. —*Constitution, Art.* 14, §11.

MILLER v. GRANDY.

The county of Jackson forms but part of an enrollment district. This act undertakes to provide that this part of the enrollment district shall be subjected to taxation, from' which the other part is exempted. This is in violation of the above provision. — *People v. Auditor General*, 7 *Mich.*, 84; *Woodbridge v. City of Detroit*, 8 *Mich.*, 274; *People v. Mayor of Brooklyn*, 4 *Comstock*, 417.

This tax applies only to the county of Jackson, and is not uniform, even in Jackson county, because one town may have given larger bounties than another, and because there is no way of carrying out the act in the city of Jackson. — Cases above, and *Laws of* 1865, 29 and 30; *Laws of* 1865, 478; *Laws of* 1857, 240, *et seq.*

Courts of Equity have jurisdiction to restrain the action of municipal bodies, when such action will be inequitable and injurious to the public interest. — *Chaffee v. Granger*, 6 *Mich.*, 51.

The Supreme Court has assumed that injunction is the proper remedy. — *Williams v. Mayor of Detroit*, 2 *Gibbs*, 560; *Lefevre v. Mayor of Detroit*, 2 *Gibbs*, 586; *Bagg v. City of Detroit;* 5 *Mich.*, 336; *Woodbridge v. City of Detroit*, 8 *Mich.*, 276; *Sisters of Charity v. City of Detroit*, 9 *Mich.*, 94; *Jackson v. City of Detroit*, 10 *Mich.*, 248; *Palmer v. Rich*, 12 *Mich.*, 414.

Bill may be filed by a private individual. — *Milhau v. Sharp*, 27 *New York*, 611.

*W. K. Gibson*, for defendants:

The bill does not present a case of imminent and irreparable injury. The injury complained of is too remote, and may never happen. It rests on contingencies which may never occur. No tax had been levied, and there was no cloud on complainant's title. — 6 *John. Ch. R.*, 497; 26 *Wend.*, 135; 4 *Barb.*, 9; 7 *Barb.*, 508; 1 *Barb. Ch. Prac.*, 609; 14 *N. Y.*, 534; *Walker's Ch. R.*, 85.

MILLER *v.* GRANDY.

The complainant has no right to file a bill in behalf of himself and other tax-payers. Such a bill can be regarded in no other light than to protect the public interests, and must be filed by the Attorney General of the State. — *Spooner v. McConnel*, 1 *McLean*, 337; 18 *New York Rep.*, 155; 32 *Barb.*, 410; 14 *New York*, 534, 506; 6 *Metcalf's Rep.*, 425.

A Court of Equity will exercise its power with great caution towards municipal corporations. It will not even restrain an illegal tax where the illegality is apparent on the face of the proceedings, and such as to render the tax void. Nor for manifest errors or irregularities, but only where a tax appears to be valid, but by some extrinsic reason is void. Nor will a Court review the proceedings of such bodies on the ground of irregularity, but will leave the party to his writ of certiorari, or action at law. — 9 *Paige Ch. Rep.*, 388; 6 *John. Ch. R.*, 28; 4 *John. Ch. R.*, 352; 1 *Paige, Ch. R.*, 114; 26 *Wend.*, 132; 14 *New York*, 534, 506; 33 *Barb.*, 322; 20 *Howard's Prac.*, 416; 24 *New York*, 345; 10 *Paige Ch. R.*, 539; 4 *Barb.*, 9, 17, 18; 3 *Denio*, 117; 25 *Conn.*, 232; 3 *Jones' Miss. R.*, 20; 22 *Ill.*, 33, 574, 594.

Neither will a Court of Equity interfere to prevent the levy and collection of a tax out of goods and chattels. — 2 *Mich.*, 584; 5 *Rhode Island*, 472; 4 *E. D. Smith*, 675.

If it shall be determined by the Court that the complainant has presented a proper case for the equitable interference of a Court of Equity, still the defendants insist their action has been under, and in accordance with, an Act of the Legislature of this State, and that such act is valid and constitutional, and its provisions are binding upon them.

The proper construction of a statute depends upon the due observance of the legal rules and maxims applicable to such construction, among which are the following :

MILLER v. GRANDY.

The Legislature is presumed to intend a reasonable and beneficial construction of its acts. — *Richards v. Daggett*, 4 *Mass.*, 534; *Somerset v. Dighton*, 12 *Mass.*, 383; 7 *Mass.*, 523; 23 *Pick.*, 93; 22 *Pick.*, 271; 24 *Pick.*, 366; 3 *Mass.*, 523.

Such a construction ought to be given, if possible, as will not suffer the statute to be defeated. —15 *Johnson's Rep.*, 358.

The whole of a statute must be considered to judge of its particular provisions. — 1 *Pick.*, 248.

A statute will not be declared void, unless the necessity be clear, decisive, and unavoidable, and of two constructions, that which will render the statute good, is to be given. — 7 *Clark, Iowa*, 262; 2 *Cowan*, 550; 18 *Mich.*, 320; 15 *New York*, 549.

The Legislature has also the power to impose a tax upon the taxable property of a town, and appropriate the same to a payment of a claim by an individual of the town, and this conflicts with no constitutional restriction. — 3 *Kernan*, 143; 13 *Pick.*, 60; 19 *New York*, 116; *Law Reporter, September*, 1865.

The above authorities recognize a distinction between the right of taxation and the taking of private property for public uses, or to give to another person.

CAMPBELL J.:

Complainant, who describes himself as a resident taxpayer, owning real and personal property, subject to taxation, in the Township of Napoleon, in Jackson County, files his bill in behalf of himself and all residents and taxpayers of that town, against the members of the Town Board, to restrain them from allowing any accounts of individuals for money pledged or advanced for bounty and enlistment purposes, and to restrain the clerk from issuing orders on said accounts, if allowed,

and the supervisors from inserting any amount so allowed on the assessment roll. The case comes up on demurrer.

An act was passed by the Legislature of 1865, entitled "An act to legalize the action of the several townships, city and wards in the County of Jackson in paying bounties to volunteers, and to refund money to pay bounties. — L. 1865, p. 477. Under this act a vote of the Township of Napoleon was had, to refund bounties, as provided for by the act, at a meeting which the complainant claims to have been irregularly called. He further states that a number of persons had contributed to procure enlistments of volunteers and substitutes, to avoid the necessity of a draft, to the amount of from seven thousand to eight thousand dollars, none of which was voted by the electors or Town Board, by way of tax, loan, or otherwise; that the Board have appointed a meeting, and intend to allow all of these claims as valid, and that the clerk intends to draw negotiable warrants, and the supervisor to insert the amount when certified upon the tax rolls. He claims this action will injure the taxpayers by clouding their titles, or compelling them to pay such illegal assessments, and prays for an injunction.

The notice of the meeting was more than six days; and as that is the time required by the statute for this particular purpose, the general statutes, fixing a different time, are *pro tanto* suspended. The want of a preliminary request is not stated in an issuable form, and need not, therefore, be regarded. Neither does the bill aver that no moneys had been advanced on township action, but only that some moneys, not so advanced, are intended to be paid by the Board.

We cannot suppose that the Legislature, by this statute, designed to provide for such advances as were made by individuals acting on their own behalf, and paying or pledging money for purposes determined upon by them-

selves entirely. Such a purpose is somewhat foreign to the title of the act, regarded as aimed at one specific purpose, and not two discordant purposes; and the duties imposed upon the town clerks of ascertaining, before the meeting, the amount of money advanced, would be impracticable, if the advances were on private account. The act was evidently aimed at enabling townships to adopt action, which was in some way taken on the faith of their future ratification, if it should be permitted, and not to open the door to the allowance of such claims as might arise from the unchecked and irregular action of persons, in no way conforming to any rule or measure adopted or sanctioned by the general authority. We are not at liberty to give to a statute a meaning which would allow taxation for purely private purposes, when a public purpose is apparent. Patriotism, and a desire to maintain the Government, by furnishing forces, speedily and efficiently, may very well be accepted as a duty by municipalities, as well as by individuals; for every part of the commonwealth is interested in the public safety. But when individuals act on their own account, they must be considered as doing what they are willing to consider their own part towards the public welfare, and they cannot shift their voluntary burden upon others. Whether they have been impelled by interest or by devotion, their private contributions occupy the same position with their other personal expenditures. When we find a statute clearly requiring any municipality to pay the private disbursements of its citizens, we shall be prepared to decide upon its validity; but we will not do such discredit to the Legislature as to assume such an intention where it is not unavoidable.

The bill, then, assumes that the complainant is likely to be damnified, because a Town Board, authorized to act upon one class of claims, intends to act upon an-

other class, which the law does not permit to be recognized.

It is a point which should not be entirely overlooked, that this statute provides for action only during the year 1865. Unless carried into effect, so as to have the claims allowed in time to be certified on or before the first Monday of October, there is no provision made to permit such action at all thereafter.

.The case has been presented on two grounds: *First*, upon the special interest of complainant, in protecting his own taxable property; and, *second*, upon the interest which he sets up in common with all taxpayers.

If this case is properly framed as a suit merely on his private behalf, for special damage apprehended to himself, (and whether it can be so considered is more than questionable,) we are called upon to determine whether his · complaint is within the reach of equity. Before the extraordinary relief of an injunction against the action of municipal boards, in their public capacity, can be granted, where it will at all interfere with their strictly public functions, a Court of Equity must have full allegations of the precise rights which will be injured, and must see that without its aid an injury will result which cannot be adequately remedied otherwise. When such a case arises, public considerations may interpose serious obstacles, which may even then prevent interference. We think that, in the present case, there are some fatal obstacles to relief, on the theory of the bill now under consideration.

Without undertaking to go into any elaborate discussion of all the questions which might arise, we feel confident that no case can be found which recognizes any propriety. in enjoining the preliminary proceedings, in advance of the actual levy of a tax, on either personalty or realty. Apart from the palpable difficulty of determining in advance whether the complainant will be

MILLER *v.* GRANDY.

in a condition to be injured when the tax is assessed,, it is always to be remembered that, under our system, taxes must be provided for at regular times, and by annual and somewhat ' rapid proceedings. They are assessed against entire districts at once; and the staying of proceedings, on behalf of one person, stops .the rev-. enue system of the entire community. Before a suit in chancery could be regularly brought to a hearing ' on proofs in the Circuit Court, (to say nothing of the hearing on appeal,) the time for action by the local officers would have gone by. No Court could ever be justified in such an interference with the necessary course of government. After a tax has been assessed and becomes collectable, each man's share becomes severable from the rest; and delaying its payment will not 'necessarily operate upon his neighbors. When his land is in danger of 'being affected by a cloud upon its title, a sufficiently clear case ' will then enable him to be relieved. — *Palmer v. Rich*, 12 *Mich. R.*, 414. But until that danger arises he cannot ask protection; and where. nothing but personalty is concerned, the circumstances must be very peculiar which will warrant equitable interference. These principles are familiar, and rest on good sense and sound policy. The present case is an excellent illustration of the necessity of this rule;, for,, before it had been argued in this Court, the Town Board had lost all power to proceed; and, had an injunction been granted and kept alive up to this time,, a decision in favor of the authority of that body would. not have aided them at all. Their whole functions, in respect to the proceedings complained of, would have been destroyed without any hearing on the merits. Such results demonstrate the impropriety of any inter-. ference, while their preliminary action has not been consummated.

We will next consider the. case in the aspect which,

we think is its proper one, as a suit to protect the public interest.

The complainant does not set up any grievance which is not of the same nature with the grievances impending over the rest of the community. The injurious attempt which was threatened is a public grievance of the same nature as a threatened public nuisance. It affects alike every taxpayer. It is an expected piece of official misconduct, whereby the municipality in the charge of the official persons will be made to suffer by their ill behavior. If the case made by the bill can be considered as a joint agreement to violate what they suppose to be the law, it would be an indictable conspiracy. If not designedly illegal, it would be a mistake committed in the exercise of duty, which would be void if exceeding their jurisdiction, but which, if not an excess of jurisdiction, must be corrected by such means as the law may have furnished for that purpose. And if no such means have been furnished, it must go uncorrected, and each private injury resulting must be remedied by itself.

This bill can only be sustained by holding that every private citizen has the right to call public officers to account for their official misconduct, affecting the body politic, and not specially one man more than another. There were a few cases decided in the Supreme Court of New York which recognized such a right; but they have been overruled repeatedly, and the doctrine is now well settled that a private taxpayer, suffering under no special grievance, is not even a proper party to a bill filed to restrain threatened misconduct. — *Davis v. Mayor of New York*, 14 *N. Y.*, 506; *Doolittle v. Supervisors of Broome County*, 18 *N. Y.*, 155; *Roosevelt v. Draper*, 23 *N. Y.*, 318. The same doctrine had been laid down in *Hale v. Cushman*, 6 *Met. R.*, 425.

A similar principle was affirmed by this Court in the cases of *The People v. Regents of the University*, 4 *Mich.*

*R.*, 98, and *The People v. Inspectors of the State. Prison*, 4 *Mich. R.*, 187. These were *mandamus* cases, but the principle applies still more forcibly to suits in equity, where a suit pending on behalf of the public interest might prevent the commencement of any other suit covering the same ground. It is easy to perceive what a door would be opened to fraud and collusion, if any individual might shape such a litigation to suit himself. The cases on which the New York Supreme Court decisions were based were cases of trust of a private nature, or private rights of common or of a similar character to these, where numerous persons were individually interested, and where their interests grew out of one transaction or fund. To prevent a multiplicity of suits, and to relieve against the inconvenience of a multitude of parties, Courts of Chancery have sometimes allowed representative suits to be brought to test the right or relieve against the grievance, which was not in any sense a joint or common one, but simply one in which all the several interests were identical in character.

The interests of men in good government are joint, and not several. The single voter or taxpayer has no voice in public affairs. He can only exercise his influence as one of a lawful majority, and then only by his vote. The men whom he aids in electing, or who are elected in spite of him, represent the common will, which is the only will that governs. And grievances which afflict the community must be redressed by those to whom the law has intrusted the duty of interference. There are some evils which cannot be redressed at all, because the discretion of the officers producing them cannot be reviewed, and the people must bear the consequences of selecting such servants. But whenever redress is attainable, it must be sought for by some other minister than a self-appointed private party, in

whom the people or their agents have not vested any such supervisory power.

The demurrer was properly sustained. The decree must be affirmed, with costs.

Martin Ch. J. and Christiancy J. concurred.

Cooley J.:

. I concur in the opinion of my brother Campbell, that the bill does not make a case of equitable cognizance, and that the decree of the Court below must be affirmed for that reason. The true construction of the statute in question seems to me somewhat doubtful, and I prefer to express no opinion regarding it.