FORTIN v. BAY CITY TRACTION & ELECTRIC CO.

1. STATUTES— SUBJECTS AND TITLES— HARMONY— ELECTRIC CARS —OPERATION.

The title of Act No. 439, Local Acts 1901, viz., "An act to regulate the operation of electric cars within the county of Bay," is broad enough to cover a section conferring a private right of action upon persons injured by reason of failure to equip electric cars with air or electric brakes as provided by the act. Const., art. 4, § 20.

2. STREET RAILROADS— OPERATION— NEGLIGENCE— VIOLATION OF STATUTE—EFFECT.

Where a provision of a statute regulating the operation of electric cars is obviously for the benefit of the public in gen-

eral, a neglect to comply with the terms of a mandatory requirement therein would at least be evidence of negligence in any action brought by an individual for injuries occasioned by such neglect, independent of an express provision making the owner of the car liable for such neglect.

3. CARRIERS—PASSENGERS—PERSONAL INJURIES—INSTRUCTIONS—PROPRIETY.

In an action against a street railroad company for personal injuries, an instruction that the fact that the car did not have air or electric brakes, as required by the statute, would make no difference in the case, unless the accident was caused or contributed to by a lack of braking power, was sufficiently favorable to defendant, where there was evidence that, had there been sufficient braking power, there would have been no difficulty in arresting the progress of the car and preventing the injury in question.

4. DAMAGES — PERSONAL INJURIES — PERMANENT INJURIES — INSTRUCTIONS—PROPRIETY.

A requested instruction not to award damages for the injury as a permanent one was properly refused where a physician testified that some impairment of plaintiff's ankle would always remain.

Error to Bay; Collins, J. Submitted June 19, 1908. (Docket No. 72.) Decided September 29, 1908.

Case by Ellen Fortin against the Bay City Traction & Electric Company for personal injuries. There was judgment for plaintiff, and defendant brings error. Affirmed.

*Weadock & Duffy,* for appellant.

*Fred W. DeFoe,* for appellee.

MONTGOMERY, J. This is an action to recover damages for personal injuries sustained by plaintiff through the negligence of the operatives of one of the defendant's cars on the Banks line, so-called, in Bay City, on the afternoon of August 12, 1905. At the crossing of the defendant's line with the tracks of the Michigan Central Railroad Company is constructed a steel viaduct, which is a continuation of the street over the Michigan Central

tracks. The southerly approach to the steelwork or span is somewhat steep. Then for a distance of 125 feet the span is level. From the end of the level portion the street slopes gradually for a distance of 650 feet, where a private driveway of the Potts Oil Company comes out to the street. The car upon which the plaintiff was riding when in use as a summer car has one side removed, and the running board or step board extends along the entire open side, permitting the passengers to get on or off between any of the seats. The rear platform is spacious, and the car may be boarded or left from it. The motorman is stationed in the front vestibule. Behind him on either side is a window, permitting a view of the track ahead from the seats in the car, and directly behind the motorman is a wooden door leading from the vestibule into the car. The plaintiff boarded the car with her daughter, Mrs. Eva Russell, between 5 and 6 o'clock, at the corner of Center and Washington streets, bound for her home in Banks. Between 3 and 4 o'clock there had been a light shower, lasting about half an hour, making the rails slippery and greasy. The car was equipped with double-purchase hand brake in good working order and supplied with sand. It approached the southerly incline of the viaduct, where, owing to the steep grade and greasy condition of the rails, there was some difficulty in making the ascent. It proceeded up slowly onto the level portion, and started down the north incline. The rate of speed at which it was making this decline is in controversy. There was testimony tending to show that the car was going at an unusually high rate of speed for this point. When the car was half way down or more, as defendant's testimony tends to show, the motorman discovered a van loaded with barrels with three horses attached, the horse nearest the car having its head just over the west track, according to the mortorman's testimony. But the testimony on behalf of the plaintiff tended to show that the motorman began to halloo when the car was from a quarter to a third of the way down the viaduct. Testimony was offered on behalf

of the plaintiff tending to show that the car, under proper control, could have been stopped within a distance of 40 feet or thereabouts. The plaintiff's testimony as to the circumstances of the injury was as follows:

" When the motorman first hollered, we were about a quarter of the distance then down the north grade of the viaduct. I heard him holler, ' Hey! Back! Hey!' and he kept hollering. He hollered an awful loud way. When he began to holler, the conductor went to the front of the car. When I seen him last, he was in the doorway to the front. I looked out to see what was the matter when they began to holler; but I couldn't see anything. I kind of thought it was a car coming. I could not see anything on the track at all, because there was no place where I could see. There was just the doorway, and they stood in the doorway. I sat on the left-hand side of the car. When the door in front of the car, which opens from the car into the vestibule, is opened, it slides, I think, to the left, so the door would be slid over in front of the window on the same side of the car where I sat. The windows on the same side of the car where I sat were closed where I was sitting, so that I could not lean out and see what the trouble was. When the motorman began hollering and the conductor went up to the front of the car, some of the passengers got up and some jumped off. I didn't hear anybody in the car say anything. It was the man at the front that did the hollering. I know when I jumped off they were yelling yet. I started to look to see what was the matter, and I could not see anything. When I see them two men jump off, I thought to myself, I guess we better jump off too, to save our lives, because I thought sure it was another car coming, the way they acted. There wasn't any employé of the street car company on the rear end of the car on the platform, and nobody said anything to me about getting off or staying on. There was no one on the rear platform at the time I got off. The people that were on the rear platform had jumped off. When I jumped, I broke my ankle."

At the close of the defendant's testimony, a motion was made to instruct a verdict for the defendant. This was refused, and the court left the question for the jury to determine as to whether the plaintiff had been by the negligence of the defendant placed in a position of peril where she

was called upon to act hastily, and whether, under the circumstances of the case, she exercised such a degree of care as was reasonable.

The car was not equipped with an electric air brake as required by Act No. 439, Local Acts 1901. This act is entitled: "An act to regulate the operation of electric cars within the county of Bay." It contains three sections, the first of which makes it the—

"Duty of every person, company and corporation operating electric cars within the county of Bay to equip all double truck cars, cars hauling freight or trailer cars with an electric air brake of the latest and most approved kind in common use on electric cars, as will effectually control the speed of such cars, or such kind as may be approved by the common council or trustees of the city or village in which such person, company or corporation is operating."

Section 2 provides: "Any person, company or corporation neglecting or refusing to comply with the provisions of this act shall be liable for all damages which shall be sustained by any person by reason of such neglect or refusal;" and also provides a penalty for failure to so run and operate a car. Section 3 repeals contravening acts. It is contended that this act contravenes section 20 of article 4 of the Constitution of Michigan, which provides that no law shall embrace more than one object, which shall be expressed in the title. It is said that section 2 confers a private right of action upon persons injured by reason of the failure to equip the cars specified with an air or electric brake, and that the title of the act gives no intimation whatever of the right of action contained in section 2, and it cannot be said that it is in any sense germane to the provisions of the act. The title to the act is sufficiently broad to cover the subject. It is obvious that an act to regulate the operation of electric cars would have, under that statement, for its purpose the protection of those who are called upon to make use of such cars, as well as others with whom such cars might come in collision. Independent of an express provision making the company liable for

neglect to comply with the terms of the statute, if the enactment were obviously for the benefit of the public in general, a neglect to comply with the terms of a mandatory requirement would at least be evidence of negligence in any action brought by an injured party. *Sterling* v. *Carbide Co.*, 142 Mich. 284. It is not inappropriate, therefore, that under such an averment the responsibility arising from failure to comply with the terms of section 1 should be declared and defined.

The case is entirely analogous to the general liquor law, which is under the title:

"An act to provide for the taxation and regulation of the business of manufacturing, selling, keeping for sale, furnishing, giving, or delivering spirituous and intoxicating liquors, and malt, brewed or fermented liquors, and vinous liquors, in this State." Act No. 313, Pub. Acts 1887.

This statute not only contains a regulation of the business and provides a penalty for the violation of its provisions, but also provides for a recovery of damages by any person who shall be injured in his person, property, or means of support by reason of any infraction of the law. In the case of *Robison* v. *Miner*, 68 Mich. 549, it was held that there was but one general purpose indicated by this title. See, also, *Soukup* v. *Van Dyke*, 109 Mich. 679; *Burrows* v. *Transportation Co.*, 106 Mich. 582 (29 L. R. A. 468).

The circuit judge charged the jury that the fact that the car in question did not have air brakes or electric brakes would make no difference in the case, unless the accident was caused or contributed to by lack of braking power. This charge was sufficiently favorable to the defendant, and there was testimony tending to show that, had there been sufficient braking power, there would have been no difficulty in arresting the progress of this car and in preventing the injury in question. We think the case was fairly submitted to the jury.

The defendant requested an instruction as follows:

"There is no testimony in this case showing that the plaintiff's injuries are permanent. I therefore charge you you will not award her damages, if you find she is entitled to any damages, for the injury as a permanent one."

The evidence of the plaintiff's physician tended to show that she was suffering from a permanent injury. We quote language which the defendant's counsel have inserted in their brief, and think it sufficient answer to the contention made:

"*Q.* State whether or not it will ever be as useful as it would have been without the injury.

"*A.* I do not think it will ever be as perfect; no.

"*Q.* State whether or not she will ever acquire the same use of it?

"*A.* I do not think she will. If it was overly used, it would make it slower of repair. Under ordinary conditions, if it was not used, the pain would practically be over with.

"*Q.* And the permanent part of the injury you have referred to would be in the nature of mobility and the general use of the joint?

"*A.* Yes, sir.

"*Q.* And, as to that part of it, you think it will always remain?

"*A.* Some impairment always."

Upon cross-examination, he testified:

"*Q.* And, considering the woman's age, and her weight and size, under all the circumstances, she is making a slow and gradual recovery, is she not?

"*A.* Not a full recovery.

"*Q.* A slow and gradual one?

"*A.* Yes, sir."

The other questions discussed by counsel have had full consideration, but we discover no error to the prejudice of defendant; and the judgment is affirmed.

OSTRANDER, HOOKER, MOORE, and McALVAY, JJ., concurred.