HOME TELEPHONE CO. *v.* MICHIGAN RAILROAD COMMISSION.

1. CORPORATIONS—INJUNCTION—EQUITY—TELEPHONES.

In a suit to enjoin the consolidation of several telephone companies, which were not represented to be engaged in interstate business, the bill setting up no violation of the Sherman anti-trust act (26 U. S. Stat. 209, U. S. Comp. Stat. 1901, p. 3200), did not warrant the interposition of the court of chancery on that ground, and presented no Federal question.

2. EQUITY—JURISDICTION.

Grievances which afflict the community must be redressed by those to whom the law has intrusted the duty of interference; private persons may not assume the right to institute proceedings in chancery to redress grievances on behalf of

the public; and unless their private rights are interfered
with, in a manner distinct from the wrong to the public at
large, equity has no jurisdiction.

3. Telegraphs and Telephones—Parties—Injunction.

A telephone company may not maintain a bill to restrain the
Michigan railroad commission from authorizing the consoli-
dation of other telephone companies operating in the same
or adjacent territory, if complainant's interests are not
shown to be peculiarly affected in a manner different from
other members of the community; only the attorney general
can enjoin the merger.

4. Words and Phrases—Definitions—"Regulate."

The word "regulate" as used in the title of Act No. 138, Pub.
Acts 1911 (3 How. Stat. [2d Ed.] § 7222 et seq.), "An act to
declare telephone lines and telephone companies within the
State of Michigan to be common carriers and to regulate the
same and prescribing a penalty for the violation of this act,"
includes both government and restriction and is sufficiently
broad to include regulation of operation, etc.

5. Constitutional Law—Title.

Accordingly Act No. 138, Pub. Acts 1911 (3 How. Stat. [2d Ed.]
§ 7222 et seq.), is constitutional and its title is sufficient.
Const. art. 5, § 21.

Appeal from Ingham; Collingwood, J. Submitted
January 10, 1913. (Docket No. 62.) Decided March 20,
1913.

Bill by the Home Telephone Company against the
Michigan railroad commission, the Michigan State Tele-
phone Company, the Home Telephone Company of Michi-
gan, and others, for an injunction to prevent a proposed con-
solidation of defendant telephone companies. From a de-
cree dismissing the bill, complainant appeals. Affirmed.

*James J. Noon* and *Samuel H. Kelley*, for complain-
ant.

*Grant Fellows*, Attorney General, for appellee Michi-
gan railroad commission.

*Robson & Murfin*, for defendant corporations.

Stone, J.   On July 11, 1912, the Michigan State Telephone Company, the Home Telephone Company of Michigan, the Detroit River Telephone Company, the Wayne County Telephone Company, the Macomb County Telephone Company, and the Interstate Long Distance Telephone Company, filed a petition with the Michigan railroad commission praying that certain contracts (a copy of each being attached to said petition) be authorized by said railroad commission to be consummated.   The said contracts were in effect a sale of the properties of each of the defendant telephone companies (other than the Michigan State Telephone Company) to the Michigan State Telephone Company, claiming authority therefor under and by virtue of Act No. 138 of the Public Acts of 1911 (3 How. Stat. [2d Ed.] §§ 7222 *et seq.*).   Certain other companies asked and obtained leave to intervene, and a hearing was had.   By reason of its connection with the Michigan Independent Telephone & Traffic Association, one of the interveners, complainant company was heard in the matter and was mentioned in the order granted by the commission, and it is claimed by the complainant that it thereby became a party to the record.   On the 9th day of August, 1912, defendant the Michigan railroad commission, after a hearing, made an order authorizing the consummation of said contracts, thereby authorizing a merger of all the defendant telephone companies as prayed for in the petition; said order to become effective August 15, 1912.   On August 14, 1912, complainant filed its bill of complaint in the circuit court for the county of Ingham, in chancery, praying, among other things, that said order of said Michigan railroad commission be set aside and vacated, and that it be enjoined from issuing said order, and the defendants telephone companies be enjoined from consummating such merger.   On August 16, 1912, complainant caused to be served on the defendants a copy of the bill of complaint, with a notice that application for an injunction would be made to the said circuit court, in chancery, on August 21, 1912.   On the last-named date,

and in pursuance of said notice, all parties appeared and were represented by counsel, and defendants interposed and argued their respective demurrers, hereinafter referred to. On September 9, 1912, the circuit court sustained the demurrers and entered a decree dismissing the bill of complaint. Whereupon complainant appealed from such decree to this court.

Appellant alleges and claims that Act No. 138 of the Public Acts of 1911 (3 How. Stat. [2d Ed.] §§ 7222 et seq.) is unconstitutional so far as authorizing a merger of competing telephone companies is concerned, and also that the order of the said Michigan railroad commission should be vacated and set aside, for the reason that it enlarges the scope of the said act, even if constitutional, by creating a legalized monopoly in the Michigan State Telephone Company in certain territory of this State therein defined; and that the circuit court erred in sustaining the demurrer and dismissing the complainant's bill.

The eighth and ninth paragraphs of complainant's bill are as follows:

"(8) Your orator avers that while said order of the Michigan railroad commission attempts to protect the rights of your orator as to present existing contracts for service over other lines, yet it avers that at the expiration of said existing contracts there is no provision for renewal thereof, and only existing contracts with companies doing business in the State of Michigan are attempted to be protected, all of which is contrary to public policy, and public convenience, and detrimental to your orator's best interests.

"(9) Your orator avers that it is informed and believes it to be true that said Michigan State Telephone Company is about to consummate said proposed merger of the properties, rights, and franchises of the said Home Telephone Company of Michigan (and the other companies named) with its own properties, and said Michigan railroad commission will permit said unlawful merger or consolidation to be made unless restrained by order of this honorable court, and your orator avers that such merger and consolidation of said companies will give the said Michigan State Telephone Company a monopoly of the

telephone business to the exclusion of the independent telephone companies within a portion of the State of Michigan, to the great damage and irreparable injury of your orator and the public generally."

Without setting forth in full the demurrers of the defendants, it may be sufficient to state that the fourth ground of the joint demurrer of all the defendants, except the Michigan railroad commission, is as follows:

(4) "The bill is filed to redress an alleged injury to the complainant and 'to the public generally' as shown on the face of the bill. A private relator may not maintain an action in this form, but it must be brought through the attorney general."

(5) "Under the provisions of Public Acts of 1911, Act No. 138, the Michigan railroad commission have authority to make the order they did."

The first ground of the demurrer of the Michigan railroad commission is as follows:

(1) "The court has no jurisdiction, at the suit of said complainant, to entertain the said bill of complaint and grant relief or any part thereof prayed for therein."

(2) "Act 138 of the Public Acts of 1911 is not violative of section 21, article 5, of the Constitution of the State of Michigan."

(5) "Act 138 of the Public Acts of 1911, authorizing the consolidation, merger, and purchase of telephone companies, is valid and constitutional."

1. The first ground of the demurrer urged by defendants is that the attorney general is a necessary party to these proceedings, and a private individual may not maintain this form of action.

While paragraph 6 of the bill of complaint indicates that it is claimed that the order of the commission violates the Sherman anti-trust law (Act July 2, 1890, chap. 647, 26 U. S. Stat. 209 [U. S. Comp. Stat. 1901, p. 3200]), yet, as previously pointed out in the bill, the averments thereof expressly show that this cannot be true. As the bill distinctly states that the several defendants are all corporations operating lines or exchanges doing a telephone busi-

ness within the State of Michigan, we shall therefore not discuss or consider any Federal questions, as there is no averment or intimation in the bill that any of the companies involved are doing or contemplating an interstate commerce business. There is no allegation in the bill of complaint that the complainant is affected in any way or manner other or different than is the public generally. Act No. 138, Public Acts of 1911, bears intrinsic evidence of legislative intent to confine its provisions to intrastate telephone business. Such intention is fairly inferable from the language of both the title and the act.

We think it is well settled in this State that grievances which afflict the community must be redressed by those to whom the law has intrusted the duty of interference. Such has been the rule of law in this State for many years. *Miller* v. *Grandy*, 13 Mich. 540. It was there held that private persons could not assume to themselves the right to institute proceedings in chancery to redress grievances on behalf of the public. They can only proceed where their individual grievances are distinct from those of the public at large, and such as give them a private right to redress. In that case Justice CAMPBELL said:

"This bill can only be sustained by holding that every private citizen has the right to call public officers to account for their official misconduct, affecting the body politic, and not specially one man more than another. There were a few cases decided in the Supreme Court of New York, which recognized such a right; but they have been overruled repeatedly, and the doctrine is now well settled that a private taxpayer, suffering under no special grievance, is not even a proper party to a bill filed to restrain threatened misconduct. * * * And grievances which afflict the community must be redressed by those to whom the law has intrusted the duty of interference."

In *Steffes* v. *Moran*, 68 Mich. 291 (36 N. W. 76), it was held that public wrongs must, in this State, be redressed by the people's public agents, and not by private

intervention; and that the case of *Miller* v. *Grandy*, *supra*, laid down the Michigan doctrine on this subject, with its reasons, and has been adhered to.

In *Sweet* v. *Smith*, 153 Mich. 674 (117 N. W. 59), this court was asked to review an order of the circuit court for the county of Wayne denying a mandamus, prayed for by the relator and others, compelling the respondent "to execute and enforce all the laws pertaining to the preservation of the Sabbath, or the first day of the week, at the baseball park of the Detroit club." The purpose of the proceeding was to prohibit Sunday baseball playing in the city of Detroit. In a *per curiam* opinion this court said:

"It does not appear that the grievance of the petitioners is any other than that sustained by other citizens of the city of Detroit. Neither does it appear that the attorney general of the State has refused to take action in the matter. Under these circumstances, petitioners have no right to relief. The grievance complained of is purely a public grievance, and redress should have been sought by the people's public agents, and not by private intervention. See *People, ex rel. Russell,* v. *Inspector and Agent of State Prison,* 4 Mich. 187; *Miller* v. *Grandy,* 13 Mich. 540; *People, ex rel. Delbridge,* v. *Green,* 29 Mich. 121; *People, ex rel. McBride,* v. *Board of Sup'rs of Kent County,* 38 Mich. 422; *Steffes* v. *Moran,* 68 Mich. 291 (36 N. W. 76); *Smith* v. *City of Saginaw,* 81 Mich. 123 (45 N. W. 964).

"The decision of the circuit court was clearly correct, and we decline to review it in this court."

This subject was fully discussed and many cases cited in the recent case of *International Harvester Co.* v. *Eaton Circuit Judge,* 163 Mich. 55, at pages 66 and 67 (127 N. W. 695, 30 L. R. A. [N. S.] 580, Ann. Cas. 1912A, 1022). Under the provisions of Act No. 255, Public Acts of 1899, and the supplementary act of 1905, relating to trusts and monopolies, the attorney general is directed to institute *quo warranto* proceedings, or proceedings by injunction or otherwise, in so far as a corporation is con-

cerned, and no such right of action is given, as is claimed here.

In our opinion this ground of the demurrer was well taken and should be sustained.

2. The other grounds of demurrer above referred to may be disposed of together, in answer to the claim of the complainant that the last clause of section 6 of Act No. 138, Public Acts of 1911, is unconstitutional because not within the title of the act; it being the claim of complainant that such provision is void under section 21 of article 5 of the Constitution of the State of Michigan, which provides:

"No law shall embrace more than one object, which shall be expressed in its title."

The title of the act is as follows:

"An act to declare telephone lines and telephone companies within the State of Michigan to be common carriers, to regulate the same and prescribing a penalty for the violation of this act."

It is the argument of the complainant that that part of the act authorizing a merger of competing companies cannot be said to be expressed in the title; that there is nothing contained in the title that would indicate any authority to consolidate or merge competing companies; and that the title of an act should indicate the object to be attained. It is the further claim of the complainant that the only power sought to be given by the act to the railroad commission to authorize a merger is contained in the clause of section 6, reading as follows:

"*Provided*, that the provisions of this section in regard to switching charges shall not apply when two or more competing companies in any locality shall merge or consolidate their property and business in such locality under the direction of the said railroad commission of this State, or when one competing company shall sell or lease its plant, property and business to another company in the same locality, such merger, consolidation, sale or lease, if with the approval of the said railroad commission, being hereby declared lawful."

It is well that we add the final clause of this section, which is as follows:

"The Michigan railroad commission may make all such reasonable rules or orders as may be reasonable or necessary to carry out the intent of the provisions of this section, and refusal to obey such rules, orders or provisions of this section shall be unlawful."

The act gives the railroad commission general control over telephone companies, refers to the subjects of the service, facilities, and use of lines, and the title of the act is "to regulate the same." It does not read to simply regulate the rates, etc.; it must mean to regulate the operation of telephone lines and telephone companies. This certainly must mean regulation of the business, and regulation embraces both government and restriction, as we have frequently held.

We think that it cannot be reasonably urged that the only power given to the railroad commission to authorize a merger or purchase by one company from another is contained in the clause quoted in section 6. A careful reading of the act discloses that it is provided in section 2 of the act that the Michigan railroad commission shall have the general control of all telephones, telephone lines, and telephone companies within the State. This it seems to us has to do with regulation, and falls within the title of the act. Section 3 requires telephone companies to furnish reasonably adequate service, at reasonable rates, and gives to the commission the power to act upon the rates fixed, and to regulate by rules or order any service or facility. Section 4 is the anti-rebate section, which is clearly a regulation against unjust discrimination, etc. Section 5 relates to the same subject. The first part of section 6 provides for physical connections on the order of the commission, interchange of service, division of expense, switching service, compensation, settlement with terminal companies, subscribers to pay fee, and switching point to be designated by railroad commission. All of these matters are provided for before we reach the proviso above set

forth. All these matters have to do with regulation.
Then comes the clause providing that the provisions of
the section in regard to switching charges shall not apply
when two or more competing companies in any locality
shall merge or consolidate their property and business in
such locality under the direction of the said railroad com-
mission of this State, or when one competing company
shall sell or lease its plant, property, and business to an-
other company in the same locality, with the approval of
the railroad commission, which is thereby declared lawful.
May it not be said that there is a restriction on the power
of the railroad commission ? It was given general con-
trol by section 2.

This court held, in *Westgate* v. *Adrian Township*,
161 Mich. 333 (126 N. W. 422), that by the term "regu-
late," in the title of an act, both government and restric-
tion are intended. That case reviews and discusses most
of the decisions of this State upon the subject, and may
be cited as covering the entire question of title. It was
there held that any provision germane to the subject ex-
pressed in a title may properly be included in the act; that
it is sufficient if the title fairly expresses the subject, or is
sufficiently comprehensive to include the several provi-
sions relating to or connected with that subject, citing
Cooley on Constitutional Limitations (6th Ed.), p. 172;
*People* v. *Mahaney*, 13 Mich. 481; *People* v. *Kelly*, 99
Mich. 82 (57 N. W. 1090); *Soukup* v. *Van Dyke*, 109
Mich. 679 (67 N. W. 911); *Fortin* v. *Electric Co.*, 154
Mich. 316 (117 N. W. 741). An examination of the fol-
lowing cases cited in that opinion, holding that the word
"regulate" means both government and restriction, is en-
lightening upon this subject: *Dillon* v. *Railroad Co.*, 19
Misc. Rep. 116, 43 N. Y. Supp. 320; *City of Rochester*
v. *West*, 164 N. Y. 510 (58 N. E. 673, 53 L. R. A. 548,
79 Am. St. Rep. 659); *McWethy* v. *Power Co.*, 202 Ill.
218 (67 N. E. 9). The following authorities also may be
examined upon the point that this prohibition of the Con-
stitution should receive a reasonable and not a technical

construction, and that none of the provisions of a statute should be regarded as unconstitutional where they all relate, directly or indirectly, to the same subject having natural connection and not foreign to the subject expressed in its title. *Phillips* v. *Bridge Co.*, 2 Metc. (Ky.) 219; *State, ex rel. Stuart*, v. *Kinsella*, 14 Minn. 524 (Gil. 395).

We think the title in question is clearly broad enough to comprehend the subject-matter of this statute, including the provisions of section 6. All the rest of the act deals with matters of regulation, pure and simple.

It may be well to call attention to the fact that our statute (section 8572, 3 Comp. Laws, 4 How. Stat. [2d Ed.] § 9605), by a provision which has been upon the statute books for many years (being "An act to authorize any corporation organized under the laws of this State, to sell its property, franchise, rights and privileges to any other corporation organized under the same or any similar laws of this State for the same corporate purpose"), has been held by this court to be applicable to telephone companies. *Michigan Telephone Co.* v. *City of St. Joseph*, 121 Mich. 502 (80 N. W. 383, 47 L. R. A. 87, 80 Am. St. Rep. 520). This act provides that any corporation formed under any general law of this State may, at any general or special meeting of its stockholders, with the consent of three-fourths of its capital stock, sell and convey all of its property and franchises, rights, and privileges, or any portion of its real property or franchises, to any other corporation formed under the same or any similar law for corporate purposes of the same character.

It appears by this record that the different companies were authorized to act by their stockholders. We quote the following language, which is common to all the contracts, at the close of the contract by the Michigan State Telephone Company, with the Wayne County Telephone Company, to wit:

"In witness whereof, the Michigan State Telephone Company, the party of the first part, has caused this contract to be executed by its president and secretary, being formally authorized so to do at a meeting of the directors of that company regularly called, and the Wayne County Telephone Company, party of the second part, has caused this contract to be executed by its president and secretary by greater than a three-fourths vote of all of its stockholders at a meeting duly and regularly called for the purpose of passing upon this contract."

By said Act No. 138 the railroad commission has general control over such companies. The telephone law, so-called (section 6691, 2 Comp. Laws, 3 How. Stat. [2d Ed.] § 7214), permits a telephone company to purchase and hold stock in any corporation owning or controlling by patent, or otherwise, the use of any instrument or device necessary or convenient for use, in the transmission or reception of telephonic messages, and to purchase and hold all real property necessary to carry out the purposes of its organization. Under the averments of this bill, and certainly under the facts as found by the railroad commission, no restraint of trade is made out, because the only effect upon the business is to increase and improve it. To that extent one corporation, when properly regulated and controlled, is preferable to a number of distinct corporations, acting independently.

We think the circuit court reached the correct conclusion in sustaining the demurrers and dismissing complainant's bill.

The decree of the circuit court is affirmed, but without costs to either party.

Steere, C. J., and Moore and Ostrander, JJ., concurred with Stone, J.

Brooke, J., concurred upon the first ground discussed.

McAlvay and Bird, JJ., concurred with Brooke, J.

Kuhn, J., did not sit.