MICHIGAN INDEPENDENT TELEPHONE & TRAFFIC ASS'N
*v.* MICHIGAN RAILROAD COMMISSION.

1. TELEGRAPHS AND TELEPHONES—CORPORATIONS—SALE OF ASSETS.
   Statutes and decisions of this State recognize the right of
   one incorporated telephone company to sell all or any
   portion of its property rights, franchises, and privileges to
   another company.

2. SAME—MICHIGAN RAILROAD COMMISSION—LEASE—TRANSFER.
   In a suit to enjoin the railroad commission from authorizing
   a transfer of the assets of a telephone company to another
   and for an exchange of assets and division of territory
   between the two corporations, including the lessee's rights
   by virtue of a lease from the complainant to the Michigan
   State Telephone Company, in which was a clause that pro-
   vided that the rights and duties specified should apply
   to the successors and assigns of each, and that *"no sale
   or transfer shall operate as a consideration for the can-
   cellation or annulment of this agreement except as assented
   to in writing,"* the lessor's interest was assignable and
   could not be treated as of such a personal nature as to
   preclude a sale; the contract itself contemplating a possible
   transfer of rights obtained under it.

3. SAME—PARTIES.
   And in the absence of any averments representing that the
   rights of the lessor, which were expressly saved and
   recognized by the order of the commission authorizing the
   transfer, had been impaired, the assignment must be
   treated as subject to the lessor's rights and interest, and,
   hence, the complainant could not interfere by a restraining
   order.

Appeal from Kent; McDonald, J.   Submitted Octo-
ber 28, 1915.   (Docket No. 165.)   Decided March 30,
1916.

Bill by the Michigan Independent Telephone & Traf-
fic Association against the Michigan Railroad Commis-
sion to set aside an order of defendant permitting the

sale or interchange of certain properties in which complainant was interested. From an order sustaining the demurrer of defendant, complainant appeals. Affirmed.

*William A. Bahlke* and *Edwin H. Lyon,* for complainant.

*Grant Fellows,* Attorney General, for defendant.

*Boudeman & Adams* and *L. C. Palmer,* for Southern Michigan Telephone Co.

*Thomas G. Long* (*Stevenson, Carpenter, Butzel & Backus,* of counsel), for Michigan State Telephone Co.

STEERE, J. Complainant filed its bill in the circuit court of Kent county, to obtain an injunction restraining further action and a decree vacating an order of the Michigan Railroad Commission, which approved and permitted the consummation of a tentative contract, entered into between the Michigan State Telephone Company and the Southern Michigan Telephone Company for an exchange and sale to each other of certain telephone property and a division of territory between them within certain portions of the counties of Branch and St. Joseph. Each of said contracting companies owns and operates a telephone system, and is duly incorporated for that purpose under Act No. 129, Pub. Acts 1883, entitled "An act for the organization of telephone and messenger service companies," and acts amendatory or supplemental thereof. Complainant is incorporated under the same act, but does not appear to itself own or operate any telephone line, its corporate activities, so far as disclosed, being confined to transmission of toll or long-distance messages, and the conduct of a so-called "interchanged business" carried on under leases, or contracts, with telephone companies or persons owning and operating telephone lines. Some time previous to the hearing before the

railroad commission which resulted in the order sought
to be vacated, complainant had entered into a contract
in the nature of a lease with the Southern Michigan
Telephone Company, whereby complainant was leased
or granted the use of certain wires, circuits,. and other
facilities for . transmission of long-distance messages
and the conduct of its interchanged business.   Claim-
ing that its rights thus obtained were involved in and
prejudiced by the contract which the commission was
asked to approve, complainant asked and was granted
leave to intervene, file objections, and be heard in the
proceedings before the commission.   Objections were
filed by it with the commission, followed by a hearing.
Subsequently the order complained of was made, and
this suit thereafter begun by complainant "as a party
in interest," to review, "vacate, and set aside" said
final order of the commission as being prejudicial to
and not in accordance with its rights.   A preliminary
injunction was granted, the defendant railroad com-
mission duly entered its appearance by the attorney
general, and a demurrer was later filed to complain-
ant's amended bill.   After a hearing upon the issue
thus framed the Kent county circuit court in chancery
sustained defendant's demurrer and dismissed com-
plainant's bill.

In the subject-matter, course pursued, proceedings
had, and questions raised, this case is, in many re-
spects, analogous to the case entitled *Home Telephone
Co.* v. *Railroad Commission,* reported in 174 Mich.
219 (140 N. W. 496).   In that case certain telephone
companies which had agreed upon a contract eleminat-
ing competition and in effect providing for a merger
by purchase and sale of properties between them, peti-
tioned the railroad commission for approval of their
contract.   The complainant there claimed to have
rights which would be adversely affected by an order
of the commission permitting such contract of merger,

and was given leave to intervene before the commission. There, as here, the petition of the contracting parties was approved by the commission, and complainant filed a bill in the chancery court against the commission, praying for an injunction and decree setting aside its order, followed by a hearing in that court upon demurrer to complainant's bill resulting in its dismissal. Various propositions common to the two cases which might otherwise demand attention here have been carefully considered and passed upon in that case. The distinctions between the two cases, as claimed and urged by complainant's counsel, are that in the former case there was no averment any of the companies involved were contemplating or doing an interstate business, while this bill distinctly alleges an interstate business, and in that case the bill neither defines the kind of contract complainant had, which it claimed involved rights to be affected by the order objected to, nor was it alleged complainant would be affected in any manner other or different than the public generally, while in this case the bill avers complainant's "private rights are interfered with and violated in a manner distinct from the wrong to the public at large as hereinafter more fully set forth," and not only are they fully set forth, but a copy of the contract itself out of which the rights which will be prejudiced by the order arise is identified (Exhibit E) and set up as an exhibit in the bill.

The first question which naturally presents itself in the order of investigation is whether, and in what way, complainant's rights under its contract with the Southern Michigan Company (Exhibit E) are legally affected or violated by the order of the railroad commission. If its rights under this contract still exist as before, it is not a legally interested party, nor entitled to file this bill under the statute relied on, and the various other questions raised and argued at length

become irrelevant here.  The indicated scheme of complainant's contract (Exhibit E), briefly stated in outline, is a lease of certain telephone facilities of the lessor to the lessee for carrying on a long-distance telephone business, granting "the use of so many long-distance circuits as may be required by the lessee for the conduct of the so-called interchanged business as hereinafter determined," it being recited, amongst many other things:

"That this lease is not intended to affect any business whatsoever originating upon or terminating upon the lines of the lessor, such business being known as 'local business.'"

The instrument is a somewhat lengthy and detailed document, with numerous descriptions, provisions, and conditions as to the rights and duties of the contracting parties between themselves, over the construction of which various questions are raised.  The question involved here does not call for a determination of the rights of the contracting parties between themselves, or a construction of their contract beyond a consideration of whether defendant's rights under it are invaded by the order of the commission.  Amongst other provisions of this contract we find the following, not elsewhere qualified so far as we are able to discover:

"*Seventeenth.* That all the rights and duties specified in this lease as vesting in either party hereto, or being required from either party to the other, shall be held to apply to the successors and assigns of each, and that no sale or transfer of the property of either party of its title or ownership shall operate as a consideration for the cancellation or annulment of this agreement except as specifically assented to in writing by the lessee, and the right to claim specific performance of this contract regardless of any change in the ownership or the control of the lessor, or any changes which may be effected in the title of its property."

The right of one incorporated telephone company to

sell all or a part of its property rights, franchises, and privileges to another incorporated telephone company is settled by statutory authority and sustaining decisions. *Michigan Telephone Co.* v. *City of St. Joseph,* 121 Mich. 502 (80 N. W. 383, 47 L. R. A. 87, 80 Am. St. Rep. 520) ; *Home Telephone Co.* v. *Railroad Commission, supra.* Under such authority the contract approved by the commission was entered into, and, mindful of the Southern Michigan Telephone Company's outstanding contract with complainant, they sought to guard the rights of all parties interested by providing in their contract, submitted to the commission and allowed by it, as follows:

"It is understood by the contracting parties hereto that nothing in this agreement is to abrogate or interfere with the arrangements now existing between the Southern Company and the Michigan Independent Telephone & Traffic Association and the transfer to the Michigan Company of lines in any way affected by such agreement with said Traffic Association is accepted with full knowledge of its provisions."

By this it is made plain that the Michigan State Telephone Company agreed to take over the property of the Southern Michigan Telephone Company, for which it contracted with full knowledge of and subject to complainant's agreement, or lease.

The railroad commission, with these contracts before it, in approving the contract between the two operating companies, took cognizance of and sought to protect intact, not only complainant's contract but all other outstanding contracts which either of the contracting petitioners had made, by comprehensive provisions in its order of approval, which are in part as follows:'

"It is further ordered that all telephone companies within the State of Michigan, the interveners in this proceeding and all their associated companies and their

successors, and the successors, lessees and assigns of
any telephone company within the State of Michigan,
jointly, severally, and in any combination, shall here-
after have, possess, and enjoy for their subscribers
and patrons all of the facilities both as to quantity and
efficiency necessary for connection and transmission
of messages to and from all of the subscribers that are
now or may hereafter be connected with the toll lines
of exchanges of the said Southern Michigan Telephone
Company, the Three Rivers Telephone Company, the
properties conveyed by the said Charles K. Esler, and
with any extension or additional lines that may be
hereafter connected with said facilities by said South-
ern Michigan Telephone Company, its successors, les-
sees, and assigns, and likewise with the lines, ex-
changes, and facilities conveyed by said Southern
Michigan Telephone Company to the Michigan State
Telephone Company, and with any exchanges and lines
of said Michigan State Telephone Company at points
where property is now conveyed by the Southern Mich-
igan Telephone Company to the Michigan State Tele-
phone Company, and any extension or additional lines
that may be hereafter connected with said facilities by
said Michigan State Telephone Company, its succes-
sors, lessees, and assigns, within the territory of the
property transferred, it being the intent and purpose
of this order to give access to all persons, associations,
and companies rendering telephone service within the
State of Michigan and to their respective successors,
lessees, and assigns, jointly, severally, and in any com-
bination, to all of the facilities within said territory,
both as to quantity and efficiency necessary for the
transmission of telephonic messages between the pa-
trons of such persons, associations, or companies af-
fording telephone service and the patrons which are
now or may hereafter be added to the lines and facili-
ties of the Southern Michigan Telephone Company
through the purchase of the various properties herein
mentioned, or through the extension and addition of
lines and other telephonic facilities, with a like access
to the facility for communication with patrons upon
the lines and exchanges conveyed by said Southern
Michigan Telephone Company to the Michigan State
Telephone Company, and with any additional subscrib-

ers and patrons that may be added thereto through the extension, enlargement, and combining of such facilities. * * *

"It is further ordered that it is not the intent of this order to change, modify, qualify, direct, or pass upon any question of rates or charges for telephone service for transmission of telephonic messages, either for local or long-distance service, or for toll service of any kind, nor to affect, qualify, disturb, or pass upon the question of validity of any contracts which may exist between any of the petitioners, or either of them, with any other telephone company," etc.

Complainant cannot enlarge its rights as fixed by its contract (Exhibit E) by the allegations in its bill. This lease contract recognizes the right to sell or assign and contemplates that there may occur a "sale or transfer of the property of either party of its title or ownership" and provides that in any such event the rights and duties vesting in the party who sells or transfers its property shall be held to apply to its successors and assigns, and the agreement be enforced as to property to which it relates. In this case the contract, not separately assigned as a distinct thing, followed and passed with the property as an incident of its transfer.

We are unable to recognize the force of complainant's contention that the contract was not assignable because personal. Not only does the contract itself contemplate that the property to which it relates may change hands, and the contract necessarily go with it as an incident of transfer, but the contracting parties were public utility corporations, having but an artificial entity, destitute of any natural personality, the persons composing their officers and members subject to change without affecting their corporate existence or the powers conferred by the statute under which they were organized. There is nothing of a personal nature in a public service corporation which can be recognized as applying to or restricting its powers to alienate or contract. If such were the law, authority of the rail-

road commission to control and regulate them might easily be evaded by the so-called personal contracts of those corporations entered into for that purpose. In principle and by authority such corporations cannot by private contracts between themselves, defeat the power of the State, through its legally constituted agencies, to regulate and control public utilities by such reasonable orders, made under legislative authority, as public convenience and necessity justify or demand.

Counsel for complainant, having contended and argued at length in their original brief that Exhibit E was "designed and intended to be executed by the co-operation of companies in sympathy with each other and with like co-operation of companies having similar leasehold contracts," that this personal character was "understood between the parties when it was entered into by them," and that "leases and other contracts which involve a personal liability, and a relation of personal confidence, or call for the skill or experience of one of the parties, are nonassignable," citing numerous authorities, subsequently state in their supplemental brief that it is not denied "but what the properties could be sold subject to the lease," and insist that their position has been misunderstood or avoided by opposing counsel in claiming complainant did not have possession and control of the properties under the leasehold agreement, while complainant's position is:

"That the effect of the proceedings before the commission is not to sell the toll line circuits subject to the lease, but that the proceedings complained of operate upon and take the possession and control of the properties from complainant and place them in the Michigan State Telephone Company."

We can discover no foundation for this contention unless it is based upon the correctness of complainant's proposition, as urged in the original brief, that its

lease contract was not assignable because personal, and therefore, although the properties could be sold, they could not pass subject to the lease because it could not be assigned. As already indicated, there can be no personal contract qualities in Exhibit E which operate to prevent it passing with the transferred property to which it related, as an incident of the transfer, under the general and well-recognized principle of law that a corporation, or individual, owning property which it is at liberty to sell may dispose of such property, whether personal or real, in whole or in part, but if such property is incumbered by a lease, mortgage, or any other contract, the property, when sold and transferred, remains subject to those burdens as before, whatever they may be, where no question of innocent purchaser arises.

In this case the order made by the commission disaffirms in distinct terms any attempt or intent to affect, qualify, disturb, or pass upon Exhibit E, and the contract it approves recognizes the same as in force, unabrogated and unaffected by the proposed transfer. If complainant was in actual or constructive possession of the transferred property before the contract was entered into between the two companies and approved by the commission, or had a right to be, under Exhibit E, its legal position and rights remained unaffected in that particular.

We find no reason for disturbing the decree of the lower court sustaining the demurrer and dismissing complainant's bill because its legal rights under the contract upon which it plants its claim (Exhibit E) remain to it as before, undetermined and unaffected by the order complained of, and, not having shown by its bill that it has been injured in that particular, it is not, under the statute relied upon, entitled, as a "party in interest," to maintain this suit against the railroad commission to vacate its order.

It is therefore not necessary nor the intent to here pass upon the various other legal questions raised and argued in the several briefs filed by counsel herein.

The decree is affirmed.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, BROOKE, and PERSON, JJ., concurred.